UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No.  CV 20-02513-MWF (MAAx) | Date:  October 27, 2020 |
| Title:     Rasha Mohammad v. General Consulate of the State of Kuwait et al | |

Present: The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

| Deputy Clerk: | Court Reporter: |
|---|---|
| Rita Sanchez | Not Reported |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
|---|---|
| None Present | None Present |

**Proceedings (In Chambers):**  ORDER RE: DEFENDANT'S MOTION TO DISMISS FOR LACK OF JURISDICTION PLAINTIFF'S FIRST AMENDED COMPLAINT [20]

 Before the Court is Defendant General Consulate of the State of Kuwait's (the "Consulate") Motion to Dismiss for Lack of Jurisdiction Plaintiff's First Amended Complaint (the "Motion"), filed on August 24, 2020. (Docket No. 20).  Plaintiff Rasha Mohammad filed an opposition on September 14, 2020.  (Docket No. 23).  Kuwait filed a reply on September 28, 2020.  (Docket No. 26).  With leave of court, Plaintiff filed a surreply on October 6, 2020, and re-filed supporting documents translated into English by a certified interpreter on October 15, 2020.  (Docket Nos. 33, 41).  Defendant State of Kuwait (the "State") did not participate in the briefing.

 The Court has read and considered the papers filed in connection with the motions and held a telephonic hearing on October 26, 2020, pursuant to General Order 20-09 arising from the COVID-19 pandemic.

 For the reasons set forth below, the Motion is **DENIED *in part* and GRANTED *in part*.**  The Consulate is not entitled to sovereign immunity because its employment of Plaintiff as an administrative assistant qualifies as commercial activity.  However, Plaintiff failed to plead sufficient facts to state a claim for breach of contract, as she pointed to no specific provision of her employment contract that the Consulate allegedly breached.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.   CV 20-02513-MWF (MAAx)**                   **Date:  October 27, 2020**
**Title:      Rasha Mohammad v. General Consulate of the State of Kuwait et al**

## I.   BACKGROUND

### A.   Procedural Background

Plaintiff initiated this action in Los Angeles Superior Court on September 4, 2018.  (*See* Notice of Removal ("NoR"), Ex. A, Complaint (Docket No. 1)).  The Consulate removed the action to federal court on March 16, 2020.  (*See id*.).  The State did not join in the removal.  (*See generally* Docket).  The Consulate filed a motion to dismiss on March 20, 2020.  (Docket No. 8).  On June 19, 2020, the Court granted the parties' stipulation permitting Plaintiff to file either an opposition or a First Amended Complaint on or before July 10, 2020.  (Docket No. 14).  On July 10, 2020, Plaintiff filed a First Amended Complaint (the "FAC").  (Docket No. 15).

On October 5, 2020, Plaintiff filed an ex parte application to file a surreply to respond to new arguments and evidence presented by the Consulate in the Reply.  (Docket No. 28).  On October 6, 2020, twenty-four hours after Plaintiff filed her application, the Court granted Plaintiff leave to file a surreply.  (Docket No. 29).  The Consulate filed an opposition to the application after the twenty-four-hour period, and after the Court had already granted the application.  (Docket No. 30).

After the Consulate objected to Plaintiff's self-translation of documents filed in support of her surreply (*see* Docket No. 35), Plaintiff filed another ex parte application on October 13, 2020, seeking to re-file these documents along with translations by a certified interpreter.  (Docket No. 36).  The Consulate filed an opposition on October 13, 2020.  (Docket No. 38).  The Court granted the second application on October 14, 2020.  (Docket No. 40).  On October 15, 2020, Plaintiff filed the certified interpreter's declaration along with the translated exhibits.  (Docket No. 41).

### B.   Factual Background

Plaintiff is a Syrian national living in California as a legal permanent resident. (Declaration of Rasha Mohammad ("Mohammad Decl.") ¶ 3 (Docket No. 23-8)).  She is not and has never been a national of Kuwait.  (*Id*. ¶ 4).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 20-02513-MWF (MAAx)                Date:  October 27, 2020
Title:      Rasha Mohammad v. General Consulate of the State of Kuwait et al

On April 1, 2014, Plaintiff entered into a written employment contract with the Consulate to work as a locally-engaged staff "secretary" for the Consulate.  (FAC ¶ 14; FAC, Ex. 1, Employment Contract).  A factual dispute exists as to the scope and nature of Plaintiff's work as a secretary, as discussed below.

Plaintiff alleges that during the course of her employment as a secretary, Defendants created a hostile work environment by harassing, discriminating, and retaliating against her on the basis of her gender, religion, and Syrian origin.  (FAC ¶¶ 39-40).  Plaintiff also alleges that Defendants violated various wage and hour laws and breached her employment contract.  (*Id*. ¶ 40).  As a result of this treatment, Plaintiff alleges that she was forced to resign and was constructively terminated from her employment, effective September 1, 2017.  (*Id*.).

Plaintiff brings twenty-three claims against Defendants, including religious, gender, and national original discrimination and retaliation under California's Fair Employment and Housing Act (Claims One through Five); harassment by employer and failure to prevent discrimination and harassment (Claims Six and Seven); constructive discharge (Claim Eight); failure to pay wages and vacation time, including failure to pay overtime wages and minimum wages, failure to provide meal and rest periods, failure to furnish accurate wage statements and keep accurate payroll records (Claims Nine through Sixteen); breach of contract and the implied covenant of good faith and fair dealing and unfair business practices (Claims Seventeen through Nineteen); violations of the Labor Code (Claim Twenty); failure to give notice before cancellation of insurance coverage (Claims Twenty-One and Twenty-Two); and improper disposition of property (Claim Twenty-Three).  (*Id*. ¶¶ 48-214).

   C.   **Evidentiary Objections**

The parties make various evidentiary objections to the declarations and documents filed in support of the briefing.  (*See* Docket Nos. 27, 31, 35, 37).

---

**CIVIL MINUTES—GENERAL**                                         3

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 20-02513-MWF (MAAx)          Date: October 27, 2020
Title:     Rasha Mohammad v. General Consulate of the State of Kuwait et al

None of the objections are convincing, as many are garden variety objections based on lack of foundation, hearsay, lack of authentication, and improper conclusions. In ruling on the motions, the Court relies only upon admissible evidence. To the extent the Court relies upon evidence to which the parties object, the objections are **OVERRULED**. To the extent the Court does not, the objections are **DENIED** *as moot*.

## II. DISCUSSION

### A. Removal Defect for Lack of Unanimity

Though Plaintiff does not bring a separate motion to remand, Plaintiff argues in response to the Motion that the Court should remand the action to state court because the State did not join in the Consulate's removal of the case (the "unanimity" requirement). (Opposition at 3-5). Defendant argues that removal was proper because the State was never served in Superior Court. (Reply at 12). Plaintiff disputes this allegation and points to evidence showing that the State was served in January 2019. (Surreply at 5 (citing Docket No. 1-9)).

"A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a)." *Smith v. Mylan Inc.*, 761 F.3d 1042, 1044 (9th Cir. 2014) (quoting § 1447(c)). Such "procedural requirements exist primarily for the protection of the parties and can be waived." *Corona-Contreras v. Gruel*, 857 F.3d 1025, 1028-29 (9th Cir. 2017) (citation and internal alterations omitted).

Plaintiff's request for remand was not made within thirty days after the Consulate's filing of the notice of removal. (*See* NoR, filed March 16, 2020).

Assuming without deciding that the State had been properly served before the Consulate's removal (and further assuming that a section in an opposition could serve as a noticed motion) Plaintiff has waived her ability to move for remand because the lack of unanimity is a procedural — not jurisdictional — defect. *See Aguon-Schulte v.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 20-02513-MWF (MAAx)         **Date:** October 27, 2020
**Title:** Rasha Mohammad v. General Consulate of the State of Kuwait et al

*Guam Election Comm'n.*, 469 F.3d 1236, 1240 (9th Cir. 2006) (characterizing removal as "procedurally defective" where defendant did not consent to removal, and distinguishing it from a lack of subject matter jurisdiction); *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1193 n.1 (9th Cir. 1988) ("The failure to join all proper defendants in a removal petition may otherwise render the removal petition procedurally defective."); *accord Esposito v. Home Depot U.S.A., Inc.*, 590 F.3d 72, 75 (1st Cir. 2009) ("The defect in the removal process resulting from a failure of unanimity is not considered to be a jurisdictional defect[.]") (citing *Loftis v. United Parcel Serv., Inc.*, 342 F.3d 509, 516-17 (6th Cir. 2003) ("technical defects in the removal procedure, such as a breach of the rule of unanimity, . . . must be raised by a party within thirty days of removal or they are waived"); *Johnson v. Helmerich & Payne, Inc.*, 892 F.2d 422, 423 (5th Cir. 1990) ("The failure of all the defendants to join in the removal petition is not a jurisdictional defect.").

Plaintiff explains that the delay in bringing a remand motion was due to the "chaos created by the COVID-19 pandemic." (Opposition at 4 n.1). Undoubtedly March 2020 was a chaotic time for us all, but Plaintiff has not pointed to — nor is the Court aware of — any authority creating an equitable exception to § 1447(c)'s thirty-day deadline, nor could the pandemic serve as an excuse for a delay of months.

Accordingly, Plaintiff's request for remand is **DENIED**.

### B.     Applicability of the Foreign Sovereign Immunities Act

The Consulate argues that the Court lacks jurisdiction over this action because the Consulate is entitled to immunity under the Foreign Sovereign Immunities Act ("FSIA"). (Motion at 7-13). Plaintiff argues that three FSIA exceptions apply here: (1) the commercial activity exception; (2) the expropriation exception; and (3) the tort exception. (Opposition at 5-23).

"The Foreign Sovereign Immunities Act provides the sole basis for obtaining jurisdiction over a foreign state in the courts of this country." *OBB Personenverkehr AG v. Sachs*, 577 U.S. 27, 30 (2015) (citation omitted). The FSIA "shields foreign

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 20-02513-MWF (MAAx)          **Date:** October 27, 2020
**Title:**     Rasha Mohammad v. General Consulate of the State of Kuwait et al

states and their agencies from suit in United States courts unless the suit falls within one of the Act's specifically enumerated exceptions." *Id*. at 29.

"A foreign defendant bears the initial burden to make a prima facie case that it is a foreign state." *Packsys, S.A. de C.V. v. Exportadora de Sal, S.A. de C.V.*, 899 F.3d 1081, 1087-88 (9th Cir. 2018) (citation and internal alterations omitted). "Once the court has determined that the defendant is a foreign state, the burden of production shifts to the plaintiff to offer evidence that an exception applies." *Id*. (citation omitted). "If the plaintiff satisfies her burden of production, jurisdiction exists unless the defendant demonstrates by a preponderance of the evidence that the claimed exception does not apply." *Id*.

It is undisputed that the Consulate is considered a foreign state for FSIA purposes. Therefore, Plaintiff has the burden to produce evidence showing that an exception applies. If she does so, the burden shifts to the Consulate to demonstrate by a preponderance of evidence that the exception does not apply.

### 1. Commercial Activity Exception

The FSIA's commercial activity exception provides: "A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case . . . in which the action is based upon a commercial activity carried on in the United States by the foreign state[.]" 28 U.S.C. § 1605(a)(2). "A 'commercial activity' means either a regular course of commercial conduct or a particular commercial transaction or act." 28 U.S.C. § 1603(d). "The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose." *Id*.

First, a court must "identify the particular conduct on which the plaintiff's action is based." *OBB Personenverkehr AG v. Sachs*, 577 U.S. 27, 33 (2015) (internal alterations and citations omitted). "[A]n action is 'based upon' the 'particular conduct' that constitutes the 'gravamen' of the suit." *Id*. at 35; *see also id*. at 33-35 (discussing *Saudi Arabia v. Nelson*, 507 U.S. 349, 356 (1993), which held that the gravamen of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 20-02513-MWF (MAAx)         Date:  October 27, 2020
Title:    Rasha Mohammad v. General Consulate of the State of Kuwait et al

plaintiff's suit against Saudi Arabia for negligent and intentional torts was not "based upon" Saudi's commercial activity in employing plaintiff at Saudi hospital, but rather, the sovereign acts of Saudi's police force that allegedly arrested and tortured plaintiff).

The "gravamen" of Plaintiff's action is the Consulate's treatment of Plaintiff as an employee during the course of her employment.  *See, e.g.*, *Merlini v. Canada*, 926 F.3d 21, 36 (1st Cir. 2019), *cert. denied*, 140 S. Ct. 2804 (2020) (plaintiff's suit against Canadian Consulate for failure to obtain worker's compensation insurance required by state law was "based on" consulate's employment of her as an administrative assistant); *Ashraf-Hassan v. Embassy of France, in the U.S.*, 610 F. App'x 3, 5 (D.C. Cir. 2015) (holding that plaintiff's suit alleging that she was harassed, subjected to a hostile work environment, and illegally terminated on the basis of her race, national origin, religion, and pregnancy were "based on" her employment with the French Embassy); *Zveiter v. Brazilian Nat. Superintendency of Merchant Marine*, 833 F. Supp. 1089, 1094 (S.D.N.Y. 1993) (Sotomayor, J.) (holding that plaintiff's sexual harassment allegations were "based on" the sovereign's employment of plaintiff as a secretary because they "concern the terms and conditions of her employment, and raise questions concerning her discharge").  All of Plaintiff's claims are "based upon" the Consulate's alleged failure to abide by laws regulating how employers must treat and compensate their employees.  (*See* FAC ¶¶ 48-214).  The Consulate does not argue otherwise.

A court must then decide whether the basis of the suit is a "commercial activity." This inquiry does not turn on "whether the foreign government is acting with a profit motive or instead with the aim of fulfilling uniquely sovereign objectives" but rather "whether the particular actions that the foreign state performs (whatever the motive behind them) are the type of actions by which a private party engages in trade and traffic or commerce."  *Rep. of Argentina v. Weltover, Inc.*, 504 U.S. 607, 614 (1992) (internal citation and quotation marks omitted).  "Even if performed with a public purpose in mind, acts by governmental entities are considered commercial in nature if the role of the sovereign is one that could be played by a private actor."  *Park v. Shin*, 313 F.3d 1138, 1145 (9th Cir. 2002); *see also Saudi Arabia v. Nelson*, 507 U.S. 349,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 20-02513-MWF (MAAx)**     **Date:  October 27, 2020**
**Title:**     Rasha Mohammad v. General Consulate of the State of Kuwait et al

360 (1993) (holding that that commercial activity under the FSIA refers to "only those powers that can also be exercised by private citizens, as distinct from those powers peculiar to sovereigns") (citation marks omitted).

The Ninth Circuit has held that the "employment of diplomatic, civil service or military personnel is governmental," because private parties necessarily cannot hire people to perform these roles, and "the employment of other personnel is commercial." *Holden v. Canadian Consulate*, 92 F.3d 918, 921 (9th Cir. 1996).  "Activities such as a government's employment or engagement of laborers, clerical staff or public relations or marketing agents would be among those included within the definition of commercial activity."  *Id*. (citing H. Rep. No. 94-1487, 94th Cong., 2d Sess. at 16, reprinted at 1976 U.S. Code Cong. & Ad. News 6604, 6615) (internal alterations omitted).

*Holden* is instructive.  Arlene Holden, a "Commercial Officer" within the Trade and Investment Section of the Canadian Consulate, sued the Canadian Consulate after she was terminated and replaced by a younger, less experienced man, alleging sex discrimination, age discrimination, violation of California public policy, breach of the implied contract to terminate only for cause, and breach of the covenant of good faith and fair dealing.  *Holden*, 92 F.3d at 920.  To determine whether the Canadian Consulate's employment of her was a "commercial activity," the Ninth Circuit looked past Holden's job title to assess the nature of her responsibilities.  *Id*. at 921.  Holden was not a civil servant because she "did not compete for any examination prior to being hired, was not entitled to tenure, was not provided the same benefits as foreign service officers and did not receive any civil service protections from the Canadian government."  *Id*.  Holden was also not diplomatic personnel because the nature of her work was "more analogous to a marketing agent" and she "was not involved in any policy-making and was not privy to any governmental policy deliberations[;]" "she did not engage in any lobbying activity or legislative work for Canada, and she could not speak for the government."  *Id*.  The Ninth Circuit held that because the nature of Holden's work was regularly conducted by private persons, FSIA's commercial activity exception applied, and the Canadian Consulate lacked sovereign immunity.  *Id*.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.**  CV 20-02513-MWF (MAAx)			**Date:**  October 27, 2020
**Title:**	Rasha Mohammad v. General Consulate of the State of Kuwait et al

As in *Holden*, Plaintiff pointed to evidence showing that the nature of her work for the Consulate was that of clerical staff, not civil servants or diplomatic personnel.

Plaintiff presented her employment contract with the Consulate, which proves that she was hired as a "secretary." (FAC, Ex. A). Plaintiff signed a sworn declaration stating that her job duties as a secretary included general office clerical work like typing letters and reports dictated, approved, and signed by others, organizing files, archiving records, filing documents, answering the phones, and maintaining files. (Mohammad Decl. ¶ 10). Her duties also involved typing up reports on public, non-confidential issues like health insurance coverage, cultural events, and remodeling of the Consulate building. (*Id.*). She helped assist others with translating things into Arabic or assisting Diplomats with writing and understanding the English language, but was not involved in policy-making or policy deliberations. (*Id.*). She was not the personal secretary of any Diplomat and all confidential material and information was locked in a room which she never entered. (*Id.* ¶ 11). Plaintiff also presented evidence that she paid U.S. taxes, unlike civil service employees, was never issued a special identification card by the State Department, never held an official civil service passport, and never received any civil service benefits or protections. (*Id.* ¶ 13; *see also* Supplemental Declaration of Rasha Mohammad ("Mohammed Supp. Decl.") ¶¶ 16-19 (Docket No. 33-2)).

Plaintiff has met her burden of production to show that the Consulate employed her to perform routine secretarial and administrative tasks, and thus, the commercial activity exception applies. *See Merlini*, 926 F.3d at 34-35 (holding that Canadian Consulate's employment of plaintiff as clerical staff was a commercial activity); *Zveiter*, 833 F. Supp. at 1093 (holding that sovereign's employment of secretary was a commercial activity); *Ashraf-Hassan*, 610 F. App'x at 5 (holding that the course of plaintiff's employment at the French embassy in an administrative capacity constitutes a commercial activity); *Harmouche v. Consulate Gen. of State of Qatar*, 313 F. Supp. 3d 815, 822 (S.D. Tex. 2018) (holding that sovereign's employment of plaintiff as public relations manager, which included administrative tasks like answering the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 20-02513-MWF (MAAx)          **Date:** October 27, 2020
**Title:**     Rasha Mohammad v. General Consulate of the State of Kuwait et al

phone, making copies, serving coffee, making hotel reservations, and organizing events, was a commercial activity).

The burden now shifts to the Consulate to show, by a preponderance of the evidence, that Plaintiff performed uniquely governmental tasks.

The Consulate presented the Declaration of Fida Bouimad ("Bouimad Decl."), a secretary for the Consulate. (*See* Docket No. 26-1). According to Bouimad, Plaintiff was a "Mission Secretary . . . directly responsible for coordinating, translating, and presenting high-level information that was both confidential and non-confidential." (Bouimad Decl. ¶ 2). However, Plaintiff presented her Consulate employment application, which confirms that her job title was "administrative assistant," not "Mission Secretary." (*See* Mohammad Supp. Decl., Ex. 8, Job Application (Docket No. 41-1)). Plaintiff's job title casts doubt on the Consulate's claim that "she was not just a clerical employee, but a civil servant[.]" (Reply at 15). Plaintiff also disputes ever being involved in confidential communications involving the government or "high level meetings" with the Consul. (*Id*. ¶¶ 8-10, 19-22).

According to Bouimad, Plaintiff was provided civil service benefits similar to those received by Consulate diplomats, specifically, she had health insurance. (Bouimad Decl. ¶ 3). However, Plaintiff filed documents showing that *all* Consulate employees, including accountants, public relations employees, typists, drivers, receptionists, and security guards receive health insurance; in contrast, diplomatic personnel *do not* have health insurance and instead forward medical invoices directly to the State for payment. (Mohammad Supp. Decl., Ex. 7, Employee Payroll Index; Ex. 10, Medical Invoices (Docket No. 41-1)).

According to Bouimad, Plaintiff was involved in "high level communications that involved the Kuwaiti government," including typing and preparing reports to be sent to the Kuwait government through diplomats. (Bouimad Decl. ¶ 5). However, Plaintiff provided specific examples of the allegedly "high-level" communications and information she would translate, which included things like newspaper articles, requests to supply the Consulate with coffee supplies, requests to renew the garden's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 20-02513-MWF (MAAx)          **Date:** October 27, 2020
**Title:** Rasha Mohammad v. General Consulate of the State of Kuwait et al

maintenance contract, and reports on health insurance. (Mohammad Supp. Decl., Ex. 9, Daily Translation Chart).

According to Bouimad, Plaintiff had "contact and access to confidential legal communication," and in fact, Plaintiff first learned of her lawyer for the current case through confidential information that she accessed while working at the Consulate. (Bouimad Decl. ¶ 4 n.1). However, Plaintiff disputes that she ever had access to confidential legal information and asserts that she met her current attorney because they attend the same church, and both attend Lebanese community events. (Mohammad Supp. Decl. ¶ 23).

According to Bouimad, Plaintiff never reported to the Consulate that she "had been discriminated against and/or harassed at work prior to filing suit." (Bouimad Decl. ¶ 6). However, Plaintiff presented evidence that she *did* report the discrimination and harassment to the Consulate while she still worked there, well before filing suit. (*See* Mohammad Supp. Decl., Ex. 11, Email to Consulate dated August 17, 2017 (Docket No. 33-7)). Although this disproven allegation is not directly relevant to the nature of Plaintiff's job duties, it serves to cast further doubt on Bouimad's credibility.

The Court has the power to hold an evidentiary hearing to resolve these factual disputes. *See Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 137 S. Ct. 1312, 1316 (2017) ("[W]here jurisdictional questions turn upon further factual development, the trial judge may take evidence and resolve relevant factual disputes."). However, the Court declines to do so. Even if the Court were to resolve the factual disputes in Bouimad's favor, the Consulate would still fall short of proving by a preponderance of the evidence that the nature of Plaintiff's work was not "regularly done by private persons." *Holden*, 92 F.3d at 922. The Bouimad Declaration fails to provide any credible evidence to support the Consulate's claim that Plaintiff was a civil servant. (*See* Reply at 14).

Although Bouimad states that Plaintiff "was an integral part of the communication channel for the Consulate" and "would communicate with certain authorities on behalf of the diplomats and the mission," Bouimad does not describe the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 20-02513-MWF (MAAx)**  **Date:  October 27, 2020**
**Title:**     Rasha Mohammad v. General Consulate of the State of Kuwait et al

specific nature of these alleged communications.  Rather, the Consulate appears to conflate the *purpose* of Plaintiff's work with the *nature* of her work.  *See Zveiter*, 833 F. Supp. at 1093 ("It is of no consequence that the purpose of employing the secretary was to further the sovereign mission of the foreign state, since '[t]he commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose.'") (quoting 28 U.S.C. § 1603(d)).  That Plaintiff was an "integral part" of the Consulate's communication channels is irrelevant unless she performed tasks that "only a sovereign state could perform."  *Park*, 313 F.3d at 1145 (holding that the Consulate's employment of plaintiff as a domestic servant was a commercial activity under FSIA because "private actors commonly employ domestic servants" and it was "irrelevant" that plaintiff was hired to entertain Consulate guests).  Yet, Bouimad does not claim that Plaintiff had discretionary job duties, was substantively involved in the making of policy or other governmental decisions, engaged in lobbying activity or legislative work, or had the authority to discuss substantive policy matters on behalf of the Kuwaiti government.

Indeed, Bouimad's vague assertions leave open the possibility that the nature of Plaintiff's "communications" "on behalf of the diplomats" was nothing more than the translation of Arabic and English.  (*See* Mohammad Decl. ¶ 10 ("I was involved with reports to assist others, including Diplomats, with difficulties in writing or understanding the English language")).  The nature of a translating role is not "peculiar to sovereigns."  *Brakchi v. Consulate Gen. of Qatar*, No. CV 17-1926, 2018 WL 6622553, at *3 (S.D. Tex. Oct. 1, 2018) (holding that plaintiff's employment as an interpreter for the Consulate of Qatar was commercial in nature) (citation omitted).  Similarly, even if the Consulate could prove that Plaintiff was exposed to confidential information while performing secretarial duties or translating for Consulate diplomats, that fact would not alter the commercial nature of her job.  Private parties frequently hire secretaries and interpreters to perform duties that involve sensitive or confidential information, for example, to assist with international business deals or to facilitate communication between attorneys and clients who speak different languages.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 20-02513-MWF (MAAx)          **Date:** October 27, 2020
**Title:**    Rasha Mohammad v. General Consulate of the State of Kuwait et al

Finally, although Bouimad claims that Plaintiff had special privileges unique to civil servants, Bouimad offers only one example: Plaintiff received health insurance. As noted above, Plaintiff rebutted this claim by producing evidence that all employees received health insurance.

In sum, the Bouimad Declaration fails to provide specific facts substantiating the Consulate's claim that Plaintiff was a civil servant. *See Brakchi*, 2018 WL 6622553, at *2-3 (holding that Qatar failed to meet its burden to show that plaintiff was a civil servant where Vice Consul's stated in conclusory fashion that plaintiff was "considered and treated as a civil servant" but presented no specific evidence in support); *Holden*, 92 F.3d at 921. The Consulate has failed to meet its burden to show by a preponderance of the evidence that its employment of Plaintiff as a secretary was not commercial in nature.

At the hearing, the Consulate suggested that the parties needed an opportunity to brief the issues fully without last minute filings, referencing Plaintiff's two ex parte applications following the Reply. The Consulate had ample opportunity to obtain and file evidence in support of its Motion and Reply, irrespective of Plaintiff's subsequent filings. Indeed, the FAC put the Consulate on notice that Plaintiff intended to rely on the commercial exception of the FSIA and even described Plaintiff's specific job responsibilities in detail. (*See* FAC ¶¶ 10-25). The Consulate opted to rely on the Bouimad Declaration. It cannot now contend that the briefing was incomplete merely because the Bouimad Declaration was insufficient to support its position.

The Consulate also characterized Plaintiff's Declaration and the Bouimad Declaration as "polar opposites" and requested a delay of thirty to sixty days to conduct additional discovery regarding the nature of Plaintiff's job duties. After reviewing the Bouimad Declaration again, the Court declines to grant additional time for discovery or an evidentiary hearing. As noted above, even if Bouimad's assertions were accepted as true, they still would not support a finding that Plaintiff was a civil servant. At best, they show that Plaintiff was privy to confidential information in performing the same role that a private interpreter would. Moreover, Plaintiff provided strong evidence in her favor indicating that she was not diplomatic staff or making

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 20-02513-MWF (MAAx)**             **Date:  October 27, 2020**
**Title:**     Rasha Mohammad v. General Consulate of the State of Kuwait et al

policy for the State of Kuwait, but that she worked solely in an administrative capacity. Nothing in the Bouimad Declaration contradicts these specific facts. Additional discovery and an evidentiary hearing are unnecessary because the Bouimad Declaration fails to create any material dispute with respect to Plaintiff's job duties.

Accordingly, FSIA's commercial activity exception applies to the action and the Consulate's Motion for lack of jurisdiction is **DENIED**. Because the Court holds that the commercial activity exception applies, it does not decide whether the expropriation or tort exceptions apply as well.

### C.     Failure to State a Claim

The Consulate argues that Plaintiff fails to state a claim for breach of contract, breach of the implied covenant of good faith and fair dealing, and unfair business practices (Claims Seventeen through Nineteen) because she does not state the term of the agreement which the Consulate allegedly breached. (Motion at 13-14). Plaintiff argues that the Consulate breached the provision of her contract, attached to the FAC, which states that "'where there is no specific provision in the contract,' the contract shall operate and be subject to the 'regulations of locally engaged staff employed at the consulate.'" (Opposition at 24). The Consulate responds that Plaintiff fails to state what those regulations are, and prove that the regulations limited locally engaged staff's hours to a maximum of forty per week. (Reply at 22).

The Court follows *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007), *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and their Ninth Circuit progeny. "Dismissal under Rule 12(b)(6) is proper when the complaint either: (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim for relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

The Court agrees with the Consulate. Plaintiff has not plead specific facts that would entitle her to relief on the breach of contract claim and the corresponding

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 20-02513-MWF (MAAx)          **Date:** October 27, 2020
**Title:** Rasha Mohammad v. General Consulate of the State of Kuwait et al

---

implied covenant and unfair business practices claims. Plaintiff must state with specificity which part(s) of the employment contract Defendants allegedly breached.

Accordingly, the Motion as to Plaintiff's Claims Seventeen through Nineteen is **GRANTED** *with leave to amend*. *See Carolina Cas. Ins. Co. v. Team Equip., Inc.*, 741 F.3d 1082, 1086 (9th Cir. 2014) ("A complaint should not be dismissed without leave to amend unless amendment would be futile.").

## III.   CONCLUSION

Plaintiff's request for remand is **DENIED**. The Motion as to sovereign immunity is **DENIED**. The Motion as to Plaintiff's failure to plead facts for Claims Seventeen-Nineteen is **GRANTED** *with leave to amend*.

Plaintiff shall file her Second Amended Complaint ("SAC"), if any, on or before **November 9, 2020**. Defendants shall file a response to the SAC by no later than **November 23, 2020**. Claims Seventeen through Nineteen will be dismissed with prejudice if Plaintiff fails to file the SAC by **November 9, 2020**. Although there may be a Second Amended Complaint, there will be no Third. Any further successful motion to dismiss will be granted without leave to amend.

IT IS SO ORDERED.